UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER SPIESS,

                        Plaintiff,          08-CV-6211

             v.                             **DECISION**
                                            **and ORDER**
XEROX CORPORATION,

                        Defendant.

_____

## <u>INTRODUCTION</u>

Plaintiff, Christopher Spiess ("Plaintiff"), brings this action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et. seq.; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e); and the New York State Human Rights Law ("NYSHRL"), Executive Law § 296, et seq., against Defendant Xerox Corporation ("Defendant" or "Xerox"), alleging discrimination based upon his age and sex. (Dkt. No. 1 ¶ 1; <u>see also</u> ¶¶ 32-55). Specifically, Plaintiff alleges that Xerox terminated his employment with the company for discriminatory reasons related to his age and sex. <u>See</u> <u>id.</u>

Defendant Xerox Corporation moves for summary judgment dismissing Plaintiff's complaint pursuant to Rule 56(e) of the Federal Rules of Civil Procedure ("Rule 56") on the grounds that it terminated Plaintiff's employment for legitimate, non-discriminatory reasons unrelated to his age or sex. (Dkt. No. 20-2 at 1). Xerox argues that Plaintiff violated Xerox's policies prohibiting the use of Xerox information systems for the storing or sending of any inappropriate e-mail messages, including pornography and graphic violence. <u>Id.</u> Further, Xerox argues that Plaintiff

has provided no evidence that supports his claim that his termination was pretextual, or that its facially-neutral policy had a disparate impact on older employees or males. Id.

Plaintiff opposes Defendant's motion and argues that there are disputed issues of material fact which preclude granting summary judgment. (Dkt. No. 24-4 at 16). For the reasons set forth below, this Court finds that Plaintiff has not established a prima facie case of discrimination. Accordingly, Defendant's motion for summary judgment is granted, and Plaintiff's Complaint is dismissed.

## BACKGROUND

Plaintiff began working for Xerox as an engineering technician in 2000. (Dkt. No. 1 ¶ 8, see also Dkt. No. 24-5 at 3). In April 2007, Xerox terminated Plaintiff from his employment. (Dkt. No. 1 ¶ 9). During those seven years, Plaintiff received regular promotions, concomitant increases in pay, and generally had a positive performance record. See id. at 9.

Plaintiff was terminated from Xerox after an investigation revealed he had engaged in inappropriate e-mail usage that violated Xerox's Code of Ethics. (Dkt. No. 24-3 at 9). Xerox maintained a well established Code of Conduct for its employees. (Dkt. No. 20-3; see generally Dkt. No. 20-5, Exh. A). Xerox's Code of Conduct set forth its expectations regarding its employees' behavior and ethics and specifically stated that employees who violated these ethical standards would be subject to disciplinary actions, up to and including termination. (Dkt. No. 20-5, Exh. A at 3).

Xerox's Code of Conduct also contained specific provisions regarding the use of its Information Technology ("IT") Systems, including the use of its computers. (Dkt. No. 24-3 at 3; Dkt. No. 20-5, Exh. A at 6-7). These provisions, in relevant part, prohibited, inter alia, excessive personal use and the accessing of "any form of pornography." See id. Xerox had a number of professional reasons for having such policies, including to ensure that its computers and other IT systems were used to conduct Xerox business and not for any illegal or unethical activities that could subject the Company to embarrassment or legal consequences. (Dkt. No. 20-5, Exh. A at 7).

Xerox provided mandatory periodic training concerning its Code of Conduct to all employees, including Plaintiff. (Dkt. No. 20-4 ¶ 9; see also Dkt. No. 24-5 at 17). Further, employees had no expectation of privacy with regard to their use of Xerox's computer equipment or its information systems. Indeed, the Code expressly denied privacy protection for any personal information stored on Xerox equipment, and provided that Xerox would have unlimited access to any information stored on its computers or servers. (Dkt. No. 20-4, Exh. A at 12).

In February 2007, Xerox launched an investigation after offensive material was found on Xerox Capital Services, LLC employees' computers in the Lewisville, Texas facility.[1] The investigation involved five Xerox employees, including Plaintiff.

---

[1]At the time, Xerox Capital Services was an entity owned in part by Xerox Corporation and in part by GE Capital Information Technology Solutions, Inc.

The type of inappropriate e-mails found included pornographic photographs, sexually suggestive online videos, and movies depicting graphic, war-related violence. (See generally Dkt. No. 24-7, Exh. E-I). Plaintiff and the four other Xerox employees were investigated for sending and storing this inappropriate content via e-mail. (Dkt. No. 20-4 ¶ 12).

Xerox's Corporate Security department led the investigation, which included collaboration with Xerox's Human Resource's department in conducting individual interviews with each of the five employees under investigation. Id. at 13. As a result, all five employees were found to have violated Xerox's e-mail usage policies. Xerox terminated four of the employees, including Plaintiff. One of the employees, a female over the age of forty, received a final warning. The other employees were terminated because they sent or stored a greater number of inappropriate e-mails that were especially offensive or pornographic. (Dkt. No. 20-4 ¶ 17). The terminated employees were also found to have sent the inappropriate e-mails to numerous Xerox employees, as well to employees of Xerox vendors or others outside Xerox. Id.

At the time of his termination, Plaintiff was a male over the age of forty.[2] (Dkt. No. 1 ¶ 4). On May 13, 2008, Plaintiff filed the instant action against Xerox citing age and sex discrimination.

---

[2]Born on June 28, 1962, Plaintiff was forty-four at the time of his termination. See Dkt. No. 24-5 at 2 for clarification of Plaintiff's birth year.

## DISCUSSION

## I.   Standard of Review

Pursuant to Rule 56, a court may grant a motion for summary judgment if the moving party demonstrates "that there is no genuine issue as to any material fact."   See Fed. R. Civ. P. 56(c).   Once the movant has met this burden, the burden shifts to the non-movant who must "come forward with evidence to allow a reasonable jury to find in his favor" on each of the elements of his prima facie case. See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001); Celotex Corp. v. Catrett, 477 U.S. 317, 325-7 (1986).   The court must draw all factual inferences, and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmoving party.   See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Celotex Corp., 477 U.S. at 322.   However, a non-movant benefits from such factual inferences "only if there is a 'genuine' dispute as to those facts."   See Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007).

The law is well established that "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment.   See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).   The non-movant cannot survive summary judgment simply by proffering "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or presenting evidence that "is merely colorable, or is not significantly probative."   See Savino v. City of New

York, 331 F.3d 63, 71 (2d Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citation omitted)). Rather, he must "set out specific facts showing a genuine issue for trial." See Fed. R. Civ. P. 56(e)(2); see also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of ... events is not wholly fanciful.").

Claims of employment discrimination are analyzed under the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), aff'd, 528 F.2d 1102 (1976), and later refined in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981) and St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).  Initially, the plaintiff bears the burden of proving a prima facie case of discrimination.  If the plaintiff succeeds in stating a prima facie case, the burden shifts to the defendant to state a legitimate, non-discriminatory reason for the employment action.  Should the employer meet that burden, the burden then shifts back to the plaintiff to show that the reasons proffered by the employer were not the true reasons for the adverse employment action, but were a pretext for discrimination, and that discrimination was the true reason.  See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-3 (1981); St. Mary's Honor Center v. Hicks, 509 U.S. 502-6 (1993).

To establish a prima facie case of employment discrimination under Title VII, a plaintiff must show (1) that he belonged to a

protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See Shumway v. United Parcel Service, Inc., 118 F.3d 60, 63 (2d Cir. 1997). Although the Second Circuit has stated that "the burden that must be met by an employment discrimination plaintiff to survive a summary judgment motion at the prima facie stage is de minimis," Tomka, 66 F.3d at 1308 (internal citations omitted), the Second Circuit also has noted that "[a] jury cannot infer discrimination from thin air." See Norton v. Sam's Club, 145 F.3d 114 (2d Cir. 1998), cert. denied 525 U.S. 1001 (1998).

If a plaintiff establishes a prima facie case, the burden shifts to the defendant to submit a legitimate, non-discriminatory reason for the adverse employment action. See James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000). Once the defendant satisfies this burden, the burden then returns to the plaintiff to prove that the legitimate, non-discriminatory reason offered by the defendant is a mere pretext for discrimination, and that "age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Fin. Servs., 129 S. Ct. 2343, 2351 (2009)(finding that plaintiffs asserting discrimination claims under the ADEA "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged

employer decision.")[3]; _Szarzynski v. Roche Labs., Inc._, 2010 U.S. Dist. LEXIS at 17883.

## A.   **Plaintiff has Failed to Establish a Prima Facie Case of Age Discrimination.**

Plaintiff alleges claims of disparate treatment discrimination in violation of the ADEA and NYSHRL[4].  (Dkt. No 1 ¶¶ 36-49; see also Dkt. No. 24-4 at 15).  Xerox moves to dismiss Plaintiff's disparate treatment age discrimination claim because Plaintiff cannot establish a prima facie case for age discrimination or show that Xerox's legitimate, non-discriminatory reasons for his termination were pre-textual.  (Dkt. No. 20-2 at 9).

Discrimination claims under the ADEA "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision."  _Gross_, 129 S. Ct. at 2351.  As such, plaintiffs alleging ADEA discrimination claims cannot prove their claims with evidence that age was merely a "motivating factor," or

---

[3]Claims under the NYSHRL are governed by the same standards and will have the same outcome as claims analyzed under Title VII and the ADEA.  See 42 U.S.C. § 2000(e); 29 U.S.C. § 621 et. seq.; Executive Law § 296, et seq.; see also Smith v. Xerox Corp., 196 F.3d 358, 363 (2d Cir. 1999)(disparate treatment and disparate impact under ADA, ADEA, Title VII, and NYSHRL).  As such, this Court's analysis of Plaintiff's discrimination claims will apply concurrently to both his federal and state law claims.

[4]Although Plaintiff originally alleged claims of both disparate treatment and disparate impact under the ADEA and NYSHRL, Plaintiff has since conceded that his claims "do not fall within the ambit of the disparate impact paradigm." (Dkt. No. 24-4 at 15).  As such, this Court dismisses Plaintiff's disparate impact claims, and no consideration will be given to those claims in this Court's discussion.

anything less than a "but-for" cause in the adverse employment decision.  See Gross, 129 S. Ct. at 2349.

Plaintiff has not alleged that Xerox ever made any negative age-based remarks or that it took any actions suggestive of age-based discrimination throughout his employment.  See generally Dkt. No. 1.  Age-based disparate treatment claims are analyzed under the McDonnell Douglas burden-shifting analysis.  See McDonnell Douglas Corp., 411 U.S. at 802.  Under this framework, as noted above, plaintiffs bear the initial burden of establishing a prima facie case of age discrimination.  Because Plaintiff Spiess is unable to establish an inference of age bias, I find that he cannot establish a prima facie case of age discrimination.  Accordingly, Plaintiff's age discrimination claims are dismissed.

The fourth prong for making a prima facie case under the burden-shifting analysis requires Plaintiff to show that his termination from Xerox occurred under circumstances giving rise to an inference of age discrimination.  See id.  As noted above, it is uncontested that Xerox maintains a Code of Conduct that contains specific provisions regarding the use of its Information Technology ("IT") Systems, including terms for computer use.  (Dkt. No. 24-3 ¶ 3; see also Dkt. No. 20-3 ¶ 3).  These provisions, in relevant part, clearly state that employees who misuse Xerox's information systems may lose access to privileges, and may also be subject to disciplinary action, including termination.  (Dkt. No. 24-3 ¶ 3; see generally Dkt. No. 20-5, Exh. A at 6-7).  Additionally, Xerox specifically prohibits chain e-mail or virus hoaxes; harassing or

threatening communications; any form of pornography; and excessive personal use. Further, it is also uncontested that Xerox has several business-related reasons for having these policies, including to ensure that its computers and other IT systems are used to conduct Xerox business and not for any illegal or unethical activities. (Dkt. No. 24-3 ¶ 6).

While the ADEA prohibits employers from enacting policies that discriminate against employees based on age, 29 U.S.C. § 623(a)(1), the ADEA does not prevent employers from terminating employees who violate company policies prohibiting the use of its computer and other systems for the receiving and sending of sexually explicit or other offensive materials. See e.g., Pacenza v. IBM Corp., 2009 U.S. Dist. LEXIS 29778 at *49-*51 (S.D.N.Y. April 2, 2009), aff'd, 2010 U.S. App. LEXIS 2170 (2d Cir. Feb. 2, 2010)(finding that plaintiff violated a company policy that prohibited use of its computers for pornography or other offensive materials when he participated in a sexually-oriented chat room on his work computer); Kirby v. SBC Servs., 391 F. Supp. 2d 445 (N.D. Texas 2005)(finding that the receipt and distribution of sexually explicit or otherwise offensive materials is sufficient grounds for disciplinary action up to and including termination from employment).

Plaintiff admits to being one of five employees investigated by Xerox after pornographic and other offensive materials were found on the employees' work computers. (Dkt. No. 24-3 ¶ 13). The investigation was launched in February 2007 after the inappropriate

material was found on the computers of Xerox Capital Services, LLC employees in Lewisville, Texas. Id. at 11.

In his opposition papers,[5] Plaintiff contests Xerox's statement regarding commencement of the investigation because he finds issue with the investigation's start-date. (Dkt. No. 24-3 ¶ 11). He argues that, while "[a]ll of the Policy Investigation Reports for the five employees involved are dated January 2007...the investigation did not take place until April or May 2007, when Plaintiff along with 3 other employees were terminated." Id. However, Plaintiff's argument fails to establish a material dispute of fact. Plaintiff's Policy Violation Investigation Report is clearly dated April 20, 2007 and contains information regarding Plaintiff's April 17, 2007 interview. (Dkt. No. 24-7, Exh. E-H). The report was signed by the parties on April 23, 2007 and April 24, 2007. Id. The January 25, 2007 date cited by Plaintiff appears on the front page of the report; however, that date merely refers to the "Date of the Incident" that prompted the

_____

[5]This Court notes that, in addition to Plaintiff's responses to Defendant's Local Rule 56.1 statement and a sixteen-page memorandum in opposition to Defendant's motion, Plaintiff submits a fifteen-page "Counter Statement" of "material facts." Plaintiff submitted this additional statement "pursuant to" Local Rule 56.1. Since Local Rule 56.1 does not provide for such a filing in the absence of a cross motion for summary judgment, and because Plaintiff's counsel has already been given significant instruction by this Court on the purposes of this Local Rule, see e.g., Szarzynski v. Roche Labs., Inc., 2010 U.S. Dist. LEXIS 17883, at *6 (W.D.N.Y. Mar. 1, 2010)(Telesca, J.); Guarino v. St. John Fisher College, 553 F. Supp. 2d 252, n.2 (W.D.N.Y. Apr. 16, 2008), aff'd, 321 Fed. Appx. 55 (2d Cir. 2009)(Siragusa, J.), this Court will give no weight to Plaintiff's "Counter Statement," and the Counter Statement will be disregarded. See Pacenza v. IBM Corp., 363 Fed. Appx. 128, 130 (2d Cir. 2010).

investigation and in no way discredits the investigation's start-date or validity.  (Id., Exh. E).  As such, this Court finds no dispute of fact regarding the start of the investigation, or the fact that Plaintiff's name and e-mail address were among those found in the to/from header of some of the inappropriate e-mails found during the course of the investigation.  (Dkt. No. 24-3 ¶ 8).

Plaintiff does not contest that he was terminated from employment due to the February 2007 investigation into his e-mail account.  Further, he admitted to sending or receiving some of the offensive e-mails found in his account and simply denied specific recollection of others.  (Dkt. No. 24-5 at 83-107).

Plaintiff attempts to create an issue of fact by contesting Xerox's ethics policies and employee expectations, claiming that "while there was an ethics policy in place, no one followed it or understood it, including high ranking Vice President John Lange who also sent out a global non-work related e-mail." (Dkt. No. 24-3 at 2).  Plaintiff fails to present a genuine dispute of fact, however, for two reasons.  First, Plaintiff's acknowledgment that Xerox had an existing ethics policy is not negated by his claims that no one followed or understood it.  Plaintiff admitted that Xerox's ethics policy was required reading and that he was required to periodically sign off that he read it.  (Dkt. No. 24-5 at 17).  Further, Plaintiff's admission that he would sign off on the required reading without actually reading it (Id. at 17-9) does not negate the fact that Xerox had an ethics policy in place detailing its expectations of its employees and that Plaintiff agreed to

comply with Xerox's policies each time he read the Code of Conduct, signed, and acknowledged reading it.  (Dkt. No. 24-5 at 4-5).

Second, Plaintiff attempts to bolster his claims regarding Xerox's ethics policy by relying on unsupported, incomplete, and misleading information obtained in an unrelated lawsuit.  Plaintiff cites "evidence" obtained by his attorney during discovery in another unrelated lawsuit against Xerox.  That lawsuit, Glenwright et al v. Xerox Corp., No. 07-cv-6325, was filed with this Court, and Xerox's motion for summary judgment is currently pending before Judge Larimer.  (Dkt. No. 29-3 ¶ 2).  Many of the claims in Plaintiff's reply papers are cited improperly to depositions from the Glenwright lawsuit.  Indeed, Plaintiff's argument that "no one... followed ... or understood (the ethics policy)... including ... Vice President John Lange" comes directly from a deposition taken in the Glenwright proceedings.  (Dkt. No. 24-8, Exh. D, ¶¶ 27-8).  Since Plaintiff improperly relies on this extraneous "evidence," he cannot use it to create a material issue of fact in the instant case.  As such, any reliance on information from Glenwright is rejected by this Court as inadmissible and does not create a dispute of fact.

I also find that Plaintiff cannot show any circumstances that require an inference of age discrimination.  Such circumstances could include an "employer's criticism of the plaintiff's performance in [age] degrading terms, [or] the employer's invidious comments about others in the employee's protected group...." See Anderson v. Hertz Corp., 507 F. Supp. 2d 320, 327 (S.D.N.Y. 2007),

aff'd, 303 Fed Appx. 946 (2d Cir. 2008).  A plaintiff may also establish an age-based discrimination inference by showing that his employer treated him less favorably than a similarly situated employee outside the protected group.  See Khan v. Bank of Am., N.A., 572 F. Supp. 2d 278, 292 (N.D.N.Y. 2008), aff'd, 2010 U.S. App. LEXIS 8190 (2010).

Plaintiff continues to allege that he received less favorable treatment than other employees guilty of the same policy violations and that he should have received a final warning instead of termination.  (Dkt. No. 24-4 at 3-6).  To prove this claim, Plaintiff must show that the situation between him and his comparators was so similar that it supports an inference that the difference in treatment can be attributable to discrimination. Khan, 572 F. Supp. at 291.  However, Plaintiff fails to submit proof to establish that other, significantly younger, employees participated in the same or substantially similar conduct and were treated more favorably than he was, a necessary condition for establishing an inference of age bias.  See Ruiz v. County of Rockland, 609 F.3d 486 (2d Cir. 2010).

When asked to name others similarly situated, Plaintiff claimed that two younger women and some unidentified men engaged in the "same conduct but were not terminated." (Dkt. No. 24-5 at 23-31).  However, Plaintiff provided no evidence that any of the alleged comparators were substantially younger than he, nor did he provide any evidence that any of them ever sent or stored any offensive e-mails.  Instead, Plaintiff stated that when he claimed

that younger men and women used e-mails in "precisely the same fashion" as he did, but were not terminated, he was referring to the fact that these other employees had merely "sent e-mails that were not necessarily work related." (Dkt. No. 24-5 at 30-1; 53). However, Xerox's e-mail policies explicitly allow for "[c]asual personal use for the convenience of the users only if limited in frequency and duration." (Dkt. No. 20-5, Exh. A at 11). Thus, another employee's casual, non-offensive use could not place he or she in a situation similar to Plaintiff. Plaintiff could not recall ever receiving offensive or inappropriate e-mails from any of the alleged comparators, and thus had no evidence that Xerox treated any similarly situated employees more favorably. As such, I find that drawing an inference of age bias is unwarranted.

Plaintiff also improperly cites to inadmissible evidence from the Glenwright case noted above. In this instance, Plaintiff contends that six of the employees investigated during the April 2006 investigation at issue in Glenwright "all engaged in the same conduct [as Plaintiff] but were not terminated." (Dkt. No. 24-4 at 5). Even if Plaintiff's reliance on Glenwright evidence were admissible, Plaintiff's argument would be of no assistance in establishing his age discrimination claim because all six individuals cited by Plaintiff are actually several years older than Plaintiff.[6] Thus, even if the six employees from Glenwright

---

[6]The six individuals Plaintiff cited from Glenwright and their respective ages at the time of the 2006 investigation are as follows: Doug Majors, 63; John Beyea, 53; Richard Van Grol,

had received more favorable treatment, no inference of age bias could be properly drawn because they were all older than Plaintiff, who was only forty-four when he was terminated from Xerox. Additionally, Plaintiff's reliance on Glenwright evidence is further discredited as the Glenwright investigation resulted in Xerox's termination of two dozen employees guilty of the most egregious policy violations, three of whom were under forty. (Dkt. No. 29-1 ¶ 5). Thirty-two Xerox employees in Glenwright were given final warnings, with twenty-two of them as old or older than the Plaintiff in the instant action. Id.

Finally, none of the decision-makers in Glenwright were the decision-makers involved in the instant action. Additionally, none of the Glenwright plaintiffs had personal knowledge of the facts surrounding this case. Indeed, none of the Glenwright plaintiffs were even employed at Xerox during Xerox's investigation of Plaintiff Spiess or when he was terminated. As such, and as noted above, any information from Glenwright drawn by Plaintiff in an attempt to create a material dispute of fact is rejected.[7]

---

55; Daniel Burkhart, 48; Sam Stolt, 60; and Tom Peer, 59. (Dkt. No. 29-1 ¶¶ 8-13). Further, the evidence submitted in Glenwright shows that Majors and Beyea were terminated, Burkhart and Stolt received final warnings, and no action was taken against Van Grol and Peer as the investigation did not reveal anything in their e-mail accounts that would have violated Xerox's e-mail and ethics policies. (See Dkt. No. 29-1 ¶¶ 8-13; Dkt. No. 29-2, Exh. A, B).

[7]The Court notes Plaintiff's attempt to create a question of fact by submitting, among numerous others, the affidavit of Anthony Horgan, a "lower-level manager" at Xerox whose testimony was submitted during the Glenwright investigation. (Dkt. No. 24-8, Exh. A). Horgan's affidavit included his belief that the

That Plaintiff argues he should have received a final warning instead of termination, or that Xerox should have used a different investigation process (Dkt. No. 24-3 ¶¶ 24-6), does not create a material issue of fact. It is not the province of the court to second-guess such business decisions. What matters is why the employer took the action, not whether it was wise to do so. See Seils v. Rochester City Sch. Dist., 192 F. Supp. 2d 100, 111 (W.D.N.Y. 2002)(Larimer J.), aff'd, 99 Fed. Appx. 350 (2d Cir. 2004); cert. denied, 544 U.S. 920 (2005)(citations omitted). Employers should be free to choose how to discipline their employees without facing liability simply because the employees belong to a protected class. See id. See also Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982), cert. denied, 459 U.S. 1103 (1983)("The [ADEA] does not authorize the courts to judge the wisdom of a corporation's business decisions"); Kearney v. County of Rockland, 185 Fed. Appx. 68, 69-70 (2d Cir. 2006).

Plaintiff also attempts to create an issue of fact by alleging that the investigation and terminations within Xerox occurred "on the eve of a voluntary reduction in force" and that some of the employees terminated after the Glenwright investigation were replaced by younger employees. (Dkt. No. 24-4 at 3). Plaintiff's

---

Glenwright investigation was "flawed" and discriminatory. See id. Horgan's affidavit also revealed that Horgan left Xerox in June of 2006, showing that Horgan had no part of the investigation at the center of the instant action. As such, this Court gives no weight to Horgan's affidavit. Plaintiff's reliance on Horgan's testimony (see, e.g., Dkt. No. 24-3 at 4; 24-4 at 5) is rejected, and no dispute of fact is found therefrom.

argument is not persuasive.  First, the claims regarding the
Glenwright investigation are not a part of the record in this case
for the reasons noted above.  Second, Plaintiff has presented no
evidence that there was an impending voluntary reduction in force
within Xerox at the time of his investigation, or that the
investigation was pretext for targeting older workers.  In fact,
when questioned regarding these claims, Plaintiff admitted that he
did not recall that he was selected for termination on the eve of
a voluntary reduction in force.  (Dkt. No. 24-5 at 9-10).
Plaintiff admitted only to hearing "rumors" with no specific
statement from management.  See id.  Further, when asked how he
heard about the alleged voluntary reduction in force after his
termination, Plaintiff replied that he would occasionally speak
with co-workers and that "I think one guy called me and said, you
know, 'They are laying off.'  That's about it."  Id.  Since
Plaintiff has no proof to support his claims that Xerox's
investigation was pretextual or that its real motive was to
terminate older workers, this Court rejects Plaintiff's argument
and finds no material issue of fact.  I find that Xerox had
legitimate, non-discriminatory reasons for its decision to
terminate Plaintiff.  As such, I find that Plaintiff's age
discrimination claims under the ADEA and the NYSHRL must be
dismissed.

## II.  **Plaintiff has Failed to Prove his Title VII Sex Discrimination Claims.**

Plaintiff alleges that Xerox's enforcement of its policies "harm male employees ... and favor female employees" in violation of Title VII.  (Dkt. No. 1 ¶ 51).  Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., as amended, prohibits employment discrimination on the basis of, among other things, sex. See Ricci v. DeStefano, 129 S. Ct. 2658, 2672 (2009).  Employment discrimination claims brought under Title VII are analyzed under the McDonnell Douglas burden-shifting analysis noted above. McDonnell Douglas Corp., 411 U.S. at 802-3.

Plaintiff has failed to substantiate his sex discrimination claims with any evidence that would permit a finding of discrimination under the McDonnell Douglas framework. Specifically, Plaintiff fails to submit any evidence that the adverse employment actions at issue occurred under circumstances sufficient to allow a rational fact-finder to infer a discriminatory motive.  As such, Plaintiff's sex discrimination claims fail to satisfy the fourth element for establishing a prima facie case of discrimination under the McDonnell Douglas framework, and therefore fails to satisfy his evidentiary burden.

A male plaintiff may raise an inference of discrimination by showing that he was treated less favorably than female employees who were similarly situated; however, the plaintiff must show he was similarly situated in all material respects to the individuals with whom he seeks comparison.  See Shumway v. UPS, 118 F.3d at 64.

Plaintiff must show that he and his comparators engaged in acts of comparable severity, but that he suffered greater punishment than his comparators based on an application of disciplinary rules or a code of conduct.  See Carter v. New Venture Gear, Inc., 310 Fed. Appx. at 457.  See also Jackson v. PLANCO, 660 F. Supp. 2d at 578.

Here, Plaintiff fails to produce any evidence of similarly situated women who received better treatment than Plaintiff.  In fact, as a result of the investigation at the center of the instant action, Xerox disciplined two women, including terminating one of them (Pam Rama).[8]  The other woman, Christine Kane, was found to have engaged in less egregious conduct.  As noted above, Plaintiff claimed there were two younger women outside the investigation who engaged in the same e-mail usage (as his own), but were not terminated.  However, as noted previously, when questioned about the two women, Plaintiff's response made it clear that their e-mails did not reach the same offensive level of conduct.  Indeed, Plaintiff stated only that he recalled receiving "[j]ust you know, maybe a news item they have seen that's funny, or a joke, you know, just something kind of funny."  (Dkt. No. 24-5 at  9).  As mentioned above, Xerox's Code of Conduct expressly permits

---

[8]Although Plaintiff attempts to create an issue of fact by claiming that Pam Rama's policy violation report was unsigned (Dkt. No. 24-4 at 13-4), such a claim does not negate the evidence submitted to this Court that shows Rama was actually terminated from Xerox. (Dkt. No. 24-7; Exh. G at 29).  As such, this Court will find no inference that the employment actions at issue were decided based upon the gender of the employees under investigation.

employees' occasional personal use of its systems for non-prohibited conduct. Therefore, Plaintiff's arguments are unpersuasive and fail to raise a material issue of fact. Accordingly, I find that Plaintiff has not presented sufficient evidence to permit a rational fact-finder to find a sex-based inference of discrimination. As such, Plaintiff's sex discrimination claims under Title VII are hereby dismissed.

## CONCLUSION

For the reasons set forth above, Defendant Xerox's motion for summary judgment is granted. Plaintiff's complaint is hereby dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**


                                    s/Michael A. Telesca
                              _____
                                 MICHAEL A. TELESCA
                              United States District Judge

Dated:    Rochester, New York
          July 21, 2011